STANDARD OIL CO. (N. J.) v. ROBBINS
DRY DOCK & REPAIR CO.

District Court, E. D. New York. March 30,
1928.

**1. Indemnity ⊕⇒9(1)—Contract indemnifying ship from claims for injuries arising from operations under repair contract held not to cover injuries to ship's cook.**

Agreement of dry dock and repair company to protect vessel and its owners from any claims for damages for injuries arising from operations under contract for repairs *held* not to cover liability incurred by owner of vessel for injuries to ship's cook while attempting to leave vessel by means of gangway, since contract could not be construed to impose obligation to protect owner of ship against negligence of its own employees, over whom repair company had no control.

**2. Indemnity ⊕⇒9(1)—Contract to protect ship from claims for injuries arising from operations under repair contract covered only operations and conditions within repair company's control.**

Contract of dry dock and repair company to protect vessel and its owners from claims for damages for injuries arising from operations under repair contract did not cover shipowner's liability resulting from negligence and carelessness in its own employees but merely operations and conditions over which repair company had authority or control.

**3. Indemnity ⊕⇒14—Judgment against shipowner for injuries held conclusive as to facts determined therein, in subsequent action by shipowner for indemnity against repair company, given opportunity to defend.**

Where dry dock company, indemnifying shipowner against damages for injuries arising from repair of ship, was notified of claim of ship's cook and pendency of cook's action against shipowner for injuries, repair company being given opportunity to defend, judgment was conclusive on it as to existence of all facts determined therein which became material to recovery against it, in an action for indemnity brought by the shipowner.

**4. Master and servant ⊕⇒114—Owner of ship owed ship's cook duty to furnish reasonably safe means of egress.**

Owner of ship lying in dock undergoing repairs owed ship's cook undelegable duty of providing reasonably safe means of ingress and egress to and from the ship.

**5. Negligence ⊕⇒32(2)—Repair company permitting ship's employees to use its gangway, must use ordinary care to keep gangway in proper condition; owner's employees being invitees.**

Repair company, which allowed shipowner to permit its employees to use defendant's gangway as means of ingress and egress to and from ship, while lying in dock undergoing repairs, was bound to use ordinary and reasonable care to keep gangway in safe and proper condition for the uses it knew it was being put to; shipowner's employees being invitees, and not merely bare licensees.

**6. Indemnity ⊕⇒9(1)—Repair company, furnishing defective gangway used by shipowner's employees as invitees, held liable to indemnify shipowner for damages sustained as result of injuries to employee.**

Company repairing ship under contract with shipowner, which impliedly invited employees of shipowner to use gangway owned and furnished by repair company as means of ingress and egress to and from ship, *held* liable to shipowner for loss sustained by owner as result of judgment entered against it in action by ship's cook, injured on account of defective condition of gangway.

At Law. Action by the Standard Oil Company (N. J.) against the Robbins Dry Dock & Repair Company. Pursuant to stipulation, the case was tried before the court without a jury. Judgment for plaintiff.

Kirlin, Woolsey, Campbell, Hickock & Keating, of New York City (Cletus Keating, of New York City, of counsel), for plaintiff.

Cullen & Dykman, of Brooklyn, N. Y. (Timothy J. Shea and Maximilian Moss, both of Brooklyn, N. Y.), for defendant.

BRYANT, District Judge. On September 8, 1921, the steamer John Worthington, owned by plaintiff, was lying at a dock in the yard of defendant undergoing repairs. It was placed at the dock about 2 or 2:30 o'clock p. m. Between 5:30 and 6 o'clock p. m. Anstee, the ship's cook, while attempting to leave the ship by means of a gangway owned and furnished by defendant, fell from said gangway and was seriously injured. Anstee brought an action in the Supreme Court of the state of New York against both plaintiff and defendant. Prior to trial, the defendant made a settlement with Anstee for $1,000. Anstee recovered judgment against plaintiff for $10,800, which later was settled by plaintiff by payment of $10,000. It is stipulated that plaintiff paid $1,495.60 for expenses and legal services in the defense of the Anstee action. Plaintiff, the Standard Oil Company, prior to the commencement of the Anstee action against it, served notice upon defendant, the Robbins Dry Dock & Repair Company, that Anstee had made claim and demanded the Robbins Dry Dock & Repair Company to care for the same, and then after commencement of suit it again served notice upon defendant to defend the action, and notified the Robbins Dry Dock & Repair Company that plaintiff would hold it responsible for all its damages, costs, and expenses. The Robbins Dry Dock & Repair Company declined to defend the suit or indemnify the Standard Oil Company. The Standard Oil Company defended the Anstee action, which action resulted as above stated. In this action plaintiff seeks to recover from

the defendant the amount paid in satisfaction of the Anstee judgment and the expenses incurred by it in the defense thereof.

At the time of the accident the steamer John Worthington was undergoing repairs by the Robbins Dry Dock & Repair Company in pursuance of a written contract, which contained, among others, the following provisions:

"(8) * * * The contractor is to fully protect the vessel and the owners by maintaining such insurance as will protect him from claims under Workmen's Compensation Acts, and him and/or the owners from any other claims for damage for personal injury, including death, which may arise from operations under this contract, whether such operations be by himself or by any subcontractor, or by the owner or any one directly or indirectly employed by either or any of them."

Plaintiff bases its right to recovery on two grounds: (1) That pursuant to the terms of the contract (a portion of which is above quoted) defendant was obligated to protect plaintiff by obtaining and maintaining insurance protecting plaintiff from claims for damage for personal injury. That defendant failed to take out the necessary insurance, and, although requested, refused to take over the defense of the Anstee action and refused to indemnify plaintiff. (2) That the injuries sustained by Anstee, by reason of which he recovered a judgment against the Standard Oil Company, were occasioned by an act of affirmative negligence of the defendant.

[1, 2] It cannot be held that the repair contract between plaintiff and defendant obligated defendant to take insurance covering Anstee or any other member of the crew (not engaged in operations under the contract) against damage for personal injury. The contract cannot be construed to impose upon the contractor obligation to protect plaintiff against the negligence and carelessness of persons in its own employ and over whom the defendant had no authority or control. A reasonable construction seems to limit it to provide against loss or liability of plaintiff through the operations of defendant, or to loss or injury caused by physical conditions that were under the control of defendant and over which plaintiff had no control.

United States v. Wallace (C. C. A.) 18 F. (2d) 20; Manhattan R. R. Co. v. Cornell, 54 Hun, 292, 7 N. Y. S. 557.

[3] In this case, the defendant having received notice of the claim of Anstee and the pendency of the Anstee action against the plaintiff, and having been given an opportunity to defend, and there being no question of fraud or collusion, the judgment is conclusive upon the defendant as to the existence of all facts determined therein which are material to a recovery against it in an action for indemnity brought by the defendant, the indemnitee. 31 Corpus Juris, §§ 60, 61, pp. 460, 461; Washington Gas & Light Co. v. District of Columbia, 161 U. S. 316, 16 S. Ct. 564, 40 L. Ed. 712.

[4-6] The plaintiff adopted this defective gangway as a means (at least, as one of the means) of ingress and egress for its employees. Whether it was adopted by plaintiff through its failure to provide a ship ladder for its crew, or adopted because more convenient or for other reasons, does not seem to be material. The material fact is that it adopted this gangway. It owed to Anstee the undelegable duty of providing a reasonably safe means of ingress and egress to and from its ship, and this the state court found it liable for failure so to do. The defective gangway was owned and controlled by defendant. The facts and circumstances and contractual relations existing between the parties seem to warrant the conclusion that plaintiff's employees were using this gangway as invitees. They occupied a different relationship than bare licensees. The facts, circumstances, customs, and contractual relations of parties warrant drawing the conclusion that defendant not only consented, but (tacitly and impliedly, at least) invited plaintiff to allow its employees to use the gangway. This being so, the defendant was bound to use ordinary and reasonable care to keep the gangway in a safe and proper condition for the uses it knew were being made of it. This it did not do, although it knew of the defective condition and that plaintiff's employees were using same. Because of this failure defendant became responsible for the damage sustained by plaintiff.

Plaintiff is entitled to judgment against defendant for amount demanded, with costs.