462 F.2d 376
 OLYMPIC CORPORATION, Plaintiff-Appellant,
v.
SOCIETE GENERALE, A/S Havkong and Meyer Line, Defendants-Appellees.
SOCIETE GENERALE, Defendant and Third-Party
Plaintiff-Appellant and Cross Appellee,
v.
MANUFACTURE de PRODUITS CHIMIQUES PROTEX, Third-Party
Defendant-Appellee and Cross Appellant.
A/S HAVKONG (sued herein in its own name and as "Meyer
Line"), Defendant and Third-Party Plaintiff,
v.
MANUFACTURE de PRODUITS CHIMIQUES PROTEX, Alpina Transports
& Affretements S.A., Third-Party Defendants.
 Nos. 628, 688 and 689, Dockets 72-1019, 72-1031 and 72-1040.
 United States Court of Appeals,
 Second Circuit.
 Argued May 8, 1972.
Decided June 20, 1972.
 
 William J. Honan, III, New York City (Haight, Gardner, Poor & Havens and John C. Moore, New York City, on brief), for appellee A/S Havkong.
 Daniel V. Duff, Jr., New York City (Kramer, Marx, Greenlee & Backus and John M. Kriz, New York City, on brief), for third-party defendant-appellee and cross appellant.
 Joseph J. Magrath, New York City (Bigham, Englar, Jones & Houston, New York City, on brief), for plaintiff-appellant.
 Guy M. Struve, New York City (Davis, Polk & Wardwell and Thomas P. Griesa, New York City, on brief), for appellee Societe Generale.
 Before FRIENDLY, Chief Judge, and MOORE and ANDERSON, Circuit Judges.
 ANDERSON, Circuit Judge:
 
 
 1
 In November, 1969, the Olympic Corporation of Cambridge, Massachusetts, (Olympic) sold 20,000 pounds of the chemical resorcinol to Manufacture de Produits Chimiques Protex (Protex), a French corporation, for use in its plant in Chateau Renault, France. Olympic made the shipment from New York on January 16, 1970, aboard the Havskar owned by A/S Havkong and managed by the Meyer Line, both Norwegian corporations (Havkong).
 
 
 2
 Protex had arranged with Societe Generale (Societe), a French bank, to open an irrevocable letter of credit in Olympic's favor through the First National Bank of Boston; however, when Olympic did not receive the bill of lading in Boston until January 27, 1970, the Boston bank refused to honor the draft because the documents were stale. It did, with Olympic's consent, transmit the papers to Societe for further instructions, with the explicit requirement that Societe hold them at Olympic's disposal, unless Societe gave instructions to honor the draft. After receiving no reply, Olympic cabled Societe on February 5 and February 11, 1970, seeking an answer. On February 12, Societe replied that it had no instructions from Protex, so on February 13 Olympic requested the immediate return of the documents from Societe.
 
 
 3
 On February 18, Olympic resold the resorcinol to a United States buyer at a much higher price, but on that same day, Societe advised that it had released the documents to Protex and that the Boston bank could honor the draft.
 
 
 4
 In the meantime, the resorcinol had arrived in Antwerp, Belgium, on January 27 and was surrendered by Havkong on January 30 to Protex's transfer agent, Alpina Transports & Affretements S. A. (Alpina), without presentation of the bill of lading but in return for Alpina's guarantee to hold Havkong harmless. Protex then used the resorcinol in its manufacturing process during the first week of February, 1970.
 
 
 5
 Olympic instituted this suit for damages against Societe for releasing the documents to Protex contrary to its instructions and against Havkong for conversion in relinquishing the resorcinol to Alpina without receiving the bill of lading. Societe then brought a third-party complaint against Protex for any claim which Olympic had against Societe on the ground that Protex was at fault in taking the resorcinol, without presenting the proper documents or making payment, and for failing to make a timely response to Societe's requests for instructions concerning the payment of Olympic's draft. Havkong also instituted a third-party action against Alpina and Protex under their guarantee to hold Havkong harmless.
 
 
 6
 Protex moved below to dismiss Societe's third-party complaint for lack of personal jurisdiction and on the ground of forum non conveniens. Societe then moved to dismiss Olympic's complaint on the ground of forum non conveniens, in the event that its third-party complaint was dismissed. Upon the condition that both Protex and Societe submit to the jurisdiction of the French courts and waive the running of any statute of limitations, the trial judge dismissed both the complaint and the third-party complaint on the grounds of forum non conveniens, 333 F.Supp. 121 (S.D.N.Y.).
 
 
 7
 Olympic has appealed from the dismissal of its complaint and Societe has filed a protective appeal in the event that Olympic succeeds in its appeal. Protex cross-appealed from the failure of the court below to dismiss the third-party complaint for lack of personal jurisdiction.[1]
 
 
 8
 Viewing each complaint separately, there can be little doubt that the doctrine of forum non conveniens should be applied to Societe's third-party complaint against Protex,[2] but that it should not be applied to Olympic's complaint against Societe. In light of the similarity of the federal and state forum non conveniens doctrines, it is unnecessary to decide which one controls in this diversity action, Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 509, 67 S.Ct. 839, 91 L.Ed. 1055 (1947); see also, Silver v. Great American Ins. Co., 29 N.Y.2d 356, 328 N.Y.S.2d 398, 278 N.E.2d 619 (1972).
 
 
 9
 In any situation, the balance must be very strongly in favor of the defendant, before the plaintiff's choice of forum should be disturbed, Gulf Oil, supra, 330 U.S. at 508, 67 S.Ct. 839, 91 L.Ed. 1055, and the balance must be even stronger when the plaintiff is an American citizen and the alternative forum is a foreign one, Thomson v. Palmieri, 355 F.2d 64 (2 Cir. 1966); Vanity Fair Mills Inc. v. T. Eaton Co., 234 F.2d 633, 645-646 (2 Cir.), cert. denied, 352 U.S. 871, 77 S.Ct. 96, 1 L.Ed.2d 76 (1956); Hoffman v. Goberman, 420 F.2d 423, 428 (3 Cir. 1970); Mobile Tankers Co. v. Mene Grande Oil Co., 363 F.2d 611 (3 Cir.), cert. denied, 385 U.S. 945, 87 S.Ct. 318, 17 L.Ed.2d 225 (1966); cf. Swift & Co. Packers v. Compania Colombiana & Del Caribe, 339 U.S. 684, 697, 70 S.Ct. 861, 94 L.Ed. 1206 (1950).
 
 
 10
 As between Olympic and Societe, a French banking corporation with a New York branch office, the advantages to each party to try the action in its home forum would be about equal. The transactions giving rise to the cause of action took place in both the United States and France, and neither party has shown a substantial disadvantage if forced to produce witnesses in the other's forum. There is a dispute over whether the International Uniform Customs & Practice for Documentary Credits or French law would apply to the case, but in any event, the need to apply foreign law is not in itself a reason to apply the doctrine of forum non conveniens, Burt v. Isthmus Development Co., 218 F.2d 353, 357 (5 Cir.), cert. denied, 349 U.S. 922, 75 S.Ct. 661, 99 L.Ed. 1254 (1955). Therefore, Societe has not begun to demonstrate the strong justification required for the court to dismiss Olympic's action against it.
 
 
 11
 On the other hand, it is equally clear that New York is an inconvenient forum for the action between Societe and Protex, a French corporation which maintains no offices or employees in the United States and does no business with New York concerns. None of the tests to be used in balancing the choice of a forum points to New York, Gulf Oil, supra, 330 U.S. at 508-509, 67 S.Ct. 839, as this is entirely a French controversy between French citizens, see also, Garis v. Compania Maritima San Basilio, S.A., 386 F.2d 155 (2 Cir. 1967); Fitzgerald v. Westland Marine Corp., 369 F.2d 499 (2 Cir. 1966). All of the relevant transactions took place in France, the witnesses are all there, and French law would apply. In addition, any judgment entered by a United States court would quite likely be worthless, as it does not appear that Protex has assets subject to attachment in the United States, and it is very doubtful that French courts would enforce a judgment against Protex in that country. Therefore, on all accounts, this is exactly the type of case for which the forum non conveniens doctrine was designed.
 
 
 12
 Although Societe has attempted to show on appeal why New York would be an improper forum in which to defend against Olympic, it is clear that its primary concern is to have both actions tried together. The very fact that Societe only moved to dismiss Olympic's complaint in the event that its own third-party complaint against Protex was dismissed, makes it clear that Societe did not actually fear that a New York trial would work a manifest injustice. In essence, then, Societe is arguing that the doctrine of forum non conveniens should be invoked in order to enable it to try all of its claims in one court.
 
 
 13
 It is true that the third-party practice under Fed.R.Civ.Proc. 14 was designed to permit the liberal joinder of parties so that judicial energy could be conserved and consistency of results guaranteed. But, impleader practice is discretionary with the courts and care must be taken to avoid prejudice to the plaintiff or third-party defendant, see F. James, Civil Procedure, Sec. 10.20, at 508 (1965). In addition, the difference in the legal issues between Olympic and Societe and between Societe and Protex is such that it is unlikely that a separate trial of the matters will produce inconsistent results. Olympic's claim is grounded in the contention that Societe disregarded its instructions by releasing the documents to Protex "on approval." Societe defends on the basis that its actions were in accord with French banking practice, but goes on to claim that any harm done was the result of Protex's failure to make timely response to Societe's requests for instructions regarding payment of Olympic's draft. Thus, it is quite conceivable that even if all the claims were tried together, Societe might be liable to Olympic but not entitled to indemnification from Protex.
 
 
 14
 Therefore, although the benefits of impleader might be taken into account in a close case in deciding whether or not to dismiss for forum non conveniens, they are not so important as to counteract the overwhelming evidence that Olympic should be permitted to sue in the United States and that Protex should not be forced to defend here. Viewing the case in this light, we conclude that the district court exceeded the boundaries of its traditional discretion, see Gulf Oil, supra, 330 U.S. at 508, 511-512, 67 S.Ct. 839, in dismissing Olympic's complaint against Societe.
 
 
 15
 The judgment of dismissal of the complaint against Societe is reversed, the judgment of dismissal of the third-party complaint against Protex is affirmed. Olympic and Protex may recover costs against Societe.
 
 
 
 [1]
 Havkong has filed no motions in the court below, but, with permission of this court, has filed a brief responding to the claims presented on appeal. It seeks affirmance of the decisions below and has agreed to submit to the jurisdiction of the French courts, if necessary, to avoid problems with multiple litigation. So far as we are aware, Protex has made no motion in the district court with respect to Havkong's third-party complaint, which was filed after Protex moved to dismiss Societe's third-party complaint
 
 
 [2]
 Because the forum non conveniens ground is so clear, we intimate no opinion on the more difficult questions of whether or not there is personal jurisdiction over Protex under the New York "long-arm" statute, CPLR Sec. 302(a) (1), or whether or not the ancillary doctrine in federal diversity jurisdiction, Dery v. Wyer, 265 F.2d 804, 807-808 (2 Cir. 1959), should be extended to third-party actions between alien corporations, cf. Joseph Muller Corp. Zurich v. Societe Anonyme de Gerance, 451 F.2d 727, 729 (2 Cir. 1971), cert. denied, 406 U.S. 906, 92 S.Ct. 1609, 31 L.Ed.2d 816 (1972)