654 F.2d 165
 ALCOA STEAMSHIP COMPANY, INC., Plaintiff-Appellant,
v.
M/V NORDIC REGENT, her boilers, tackle, machinery and other
appurtenances in rem, and Norcross Shipping Co.,
Inc., as her Owner, in personam,
Defendant- Appellee.
 No. 826, Docket 78-7054.
 United States Court of Appeals, Second Circuit.
 Argued April 4, 1978.
Decided Aug. 31, 1978.
On Rehearing Jan. 10, 1979.
 
 J. Ward O'Neill, New York City (Haight, Gardner, Poor & Havens, New York City, Gordon W. Paulsen, Emil A. Kratovil, Jr., New York City, on the brief), for plaintiff-appellant Alcoa Steamship Company, Inc.
 Hollis M. Walker, Jr., New York City (Joseph T. Stearns, David L. Linden, and Walker & Corsa, New York City, on the brief), for defendant-appellee Norcross Shipping Co., Inc.
 Francis M. O'Regan, New York City (Bigham, Englar, Jones & Houston, New York City), for American Institute of Marine Underwriters, Amicus Curiae.
 Before WATERMAN, TIMBERS and VAN GRAAFEILAND, Circuit Judges.
 TIMBERS, Circuit Judge:
 
 
 1
 In this action commenced by Alcoa Steamship Company in the Southern District of New York to recover damages from Norcross Shipping Co., Inc. sustained as the result of a collision in Trinidad between Alcoa's pier and Norcross' vessel, the sole issue is whether the district court abused its discretion in granting Norcross' motion to dismiss the action on the ground of forum non conveniens.
 
 
 2
 After carefully weighing the relevant factors set forth in Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947), the district court found that Norcross would be unduly inconvenienced in many respects and perhaps denied an opportunity to vindicate its legal claims against the Pilots' Association if the case were tried in New York. The district court found this imbalance to be significant enough to overcome the usual reluctance of courts in this Circuit to apply the doctrine of forum non conveniens when it would force an American to bring an action outside the United States.
 
 
 3
 We hold that it was within the district court's discretion to dismiss on the ground of forum non conveniens under the circumstances of this case, and that the district court did not abuse its discretion in doing so. We affirm substantially for the reasons set forth in Judge Conner's opinion of January 17, 1978. 453 F.Supp. 10.
 
 
 4
 Affirmed.
 
 WATERMAN, Circuit Judge, concurring:
 
 5
 I concur in affirming the grant by the district judge of the defendant's motion to dismiss the complaint on the ground of forum non conveniens. I do so with great reluctance, for the position taken by may dissenting colleague is an extremely convincing one. Moreover, if I had been the district judge I could well have arrived at an opposite result to the result reached below. Although I am unimpressed with the thought that "the inability to implead the pilot association ... may seriously prejudice the defendant" and is of importance in deciding the motion, the opinion below is well reasoned and the precedents satisfactorily treated. Hence, although I do not fully join in the affirmance substantially on the opinion below, I cannot hold with my dissenting colleague that Judge Conner abused the discretion vested in him to exercise and that we should in this case reverse the order below on the ground of such an abuse.
 
 VAN GRAAFEILAND, Circuit Judge, dissenting:
 
 6
 Apellant, Alcoa, is a New York corporation with its main offices and principal place of business in New York City. It transports ore and other bulk cargoes by sea, and charters the vessels required for this purpose. It also owns and operates a transfer station ore pier at Point Tembladora, Trinidad.
 
 
 7
 Appellee, Norcross, a Liberian corporation, is the owner of the M/V Nordic Regent, one of the ships under charter to Alcoa. The ship's master, Giorgio Lissiani, and most of the members of its crew are Italian.
 
 
 8
 Shortly before midnight on January 2, 1977, the MK/V Nordic Regent was approaching the harbor at Point Tembladora, which it was not permitted to enter without a local pilot. Captain Lissiani was informed by radio that a pilot would meet him at a point about one-half mile from the harbor. However, the pilot had not yet arrived when the ship reached the point of rendezvous. Instead of waiting a few minutes for the pilot to come, Captain Lissiani barged, literally and figuratively, into the harbor without him and crashed his vessel into Alcoa's pier, doing damage estimated by Alcoa at $8,000,000.
 
 
 9
 Alcoa commenced this action in the Southern District of New York to recover for its loss, serving Norcross through its general agent in New York. Norcross moved to dismiss on forum non conveniens grounds, contending that the action should be tried in Trinidad, and its motion was granted. Because I believe that the district court abused its discretion in dismissing, I cannot concur in my brothers' decision to affirm.[1]
 
 
 10
 It is the general rule that the doctrine of forum non conveniens should be applied only where "the forum chosen by the plaintiff is so completely inappropriate and inconvenient that it is better to stop the litigation in the place where brought and let it start all over again somewhere else." Norwood v. Kirkpatrick, 349 U.S. 29, 31, 75 S.Ct. 544, 546, 99 L.Ed. 789 (1955) (quoting All States Freight v. Modarelli, 196 F.2d 1010, 1011 (3d Cir.1952)). Where plaintiff resides in the district where the suit is brought, "[u]nder the usual forum non conveniens approach, this would virtually suffice, in and of itself, to preclude a refusal to retain the case for trial." 349 U.S. at 41, 75 S.Ct. at 551 (Clark, J., dissenting).
 
 
 11
 The foregoing rule takes on added significance where the party seeking dismissal argues for a trial in a foreign jurisdiction. Although the Supreme Court in Swift & Company Packers v. Compania Columbiana Del Caribe, S.A., 339 U.S. 684, 697, 70 S.Ct. 861, 94 L..Ed. 1206 (1950), left open the question whether United States admiralty courts might decline jurisdiction over libels brought by United States citizens, we have held that an American citizen does not have the absolute right under all circumstances to sue in an American court. Vanity Fair Mills, Inc. v. T. Eaton Co., 234 F.2d 633, 645 (2d Cir.), cert. denied, 352 U.S. 871, 77 S.Ct. 96, 1 L.Ed.2d 76 (1956). In so holding, we stated, however, that we would be reluctant to deny a citizen this right. Id. at 646. Indeed, in Leasco Data Processing Equipment Corp. v Maxwell, 468 F.2d 1326, 1344 (2d Cir.1972) (quoting Burt v. Isthmus Development Co., 218 F.2d 353, 357 (5th Cir.), cert. denied, 349 U.S. 922, 75 S.Ct. 661, 99 L.Ed. 1254 (1955)), we said that "courts should require positive evidence of unusually extreme circumstances, and should be thoroughly convinced that material injustice is manifest before exercising any such discretion to deny a citizen access to the courts of this country." See also Olympic Corp. v. Societe Generale, 462 F.2d 376, 378 (2d Cir.1972); Volkswagen of America, Inc. v. S.S. Silver Isle, 257 F.Supp. 562, 563-64 (N.D.Ohio 1966); States Marine Lines, Inc. v.M/V Kokei Maru, 180 F.Supp. 255, 258 (N.D.Cal.1960). I find no "unusually extreme circumstances" or manifest "material injustice" which justified dismissal of the instant action by the district court.
 
 
 12
 The district court placed great reliance upon the availability and convenience of witnesses in Trinidad. Assuming that witness inconvenience can be considered an "unusually extreme circumstance,"[2] Norcross has not sustained its burden of proving that this circumstance exists. A party seeking to transfer a case from one United States court to another for the convenience of witnesses must identify the key witnesses to be called and must make a general statement of what their testimony will cover. Jenkins v. Wilson Freight Frowarding Co., 104 F.Supp. 422, 424 (S.D.N.Y.1952). The burden is upon it to give the names and locations of potential witnesses and the substance of their testimony. National Super Spuds v. New York Mercantile Exchange, 425 F.Supp. 665, 668 (S.D.N.Y.1977). Sufficient information must be included in its affidavits to establish that the named witnesses are key witnesses who need to be called and that their testimony is material. Texas Gulf Sulphur Co. v. Ritter, 371 F.2d 145, 148 (10th Cir.1967); Chicago, R.I. & P. R.R. v. Hugh Breeding, Inc., 232 F.2d 584, 588 (10th Cir.1956); Sinclair Oil Corp. v. Union Oil Co., 305 F.Supp. 903, 904 (S.D.N.Y.1969); Riso Kagaku Corp. v A.B. Dick Co., 300 F.Supp. 1007, 1010 (S.D.N.Y.1969); Baksay v. Rensellear Polytech Institute, 281 F.Supp. 1007, 1010 (S.D.N.Y.1968); Polychrome Corp. v. Minnesota Mining and Manufacturing Co., 259 F.Supp. 330, 335 (S.D.N.Y.1966); Peyser v. General Motors Corp., 158 F.Supp. 526, 529-30 (S.D.N.Y.1958); National Tea Co. v. The Marseille, 142 F.Supp. 415, 416 (S.D.N.Y.1956); Goodman v. Southern Ry., 99 F.Supp. 852, 855 (S.D.N.Y.1951).
 
 
 13
 Surely, a defendant who seeks to deprive an American plaintiff of access to American courts must make at least as great a showing. As this Court has stated:
 
 
 14
 In any situation, the balance must be very strongly in favor of the defendant, before the plaintiff's choice of forum should be disturbed, ... and the balance must be even stronger when the plaintiff is an American citizen and the alternative forum is a foreign one....
 
 
 15
 Olympic Corp. v. Societe Generale, supra, 462 F.2d at 378.
 
 
 16
 Two short, almost cursory, affidavits of one of defendant's New York attorneys, with an attached affidavit of the ship's master, were the only papers submitted in support of defendant's motion to dismiss. With the possible exception of the master himself, these affidavits do not state the name of a single witness whom defendant intends to call nor what the testimony of any such witness will be. From the undisputed facts appearing in the record, it is difficult to believe that there are any witnesses whose testimony would exonerate Norcross from liability. When a moving vessel collides with a pier, the vessel is presumed to be at fault. Brown & Root Marine Operators, Inc. v. Zapata Off-Shore Co., 377 F.2d 724, 726 (5th Cir.1967). When the collision occurs because the ship's master violated local ordinances and proceeded into a strange harbor at night without waiting a few moments for the assistance of a compulsory pilot, the presumption of fault is, to say the least, strongly supported by the evidence. Conduct of this nature has been described with such terms as "imprudent," American Union Transport Co. v. Aguadilla Terminal, Inc., 1962 A.M.C. 1151 (D.C.P.R.1960), aff'd in part, rev'd in part on other grounds, 302 F.2d 394 (1st Cir.1962); "folly," Cargill Inc. v. Transamerican Steamship Copr. and American Union Transport, Inc., 1963 A.M.C. 264 (S.D.N.Y.1962); "an exceedingly gross error in navigation and a decisoin of sheer lunacy," Wibur-Ellis Company v. M/V Captayannis S, 306 F.Supp. 866, 869 (D.Ore.1969), aff'd, 451 F.2d 973 (9th Cir.1971), cert. denied, 405 U.S. 923, 92 S.Ct. 962, 30 L.Ed.2d 794 (1972); and lacking in "sound judgment and discretion," The Framlington Court, 69 F.2d 300, 307 (5th Cir.) cert. denied, 292 U.S. 651, 54 S.Ct. 860, 78 L.Ed. 1500 (1934). Norcross has furnished the names of no witnesses who would describe Captain Lissiani's conduct differently.
 
 
 17
 Without setting forth the names or expected testimony of any witnesses who will be called to testify on the issue of damages, the affidavit of defendant's attorney states that testimony as to labor, material, and services "obviously" will be available only in Trinidad. Despite the fact that no factual foundation whatever was laid for this conclusory statement, the district court found that repair witness were "concededly" residents of Trinidad. I find no such concession in appellant's answering affidavits. They show, on the contrary, that repairs to the pier will be performed by a United States general contractor under the supervision of Alcoa officials who reside in the United States.
 
 
 18
 In any event, the cost of repairs will of necessity be the subject of independent expert testimony, and the residence and convenience of expert witnesses is not a significant or controlling factor in determining the question of forum non conveniens. Magnetic Engineering & Mfg. Co. v. Dings Magnetic Separator Co., 86 F.Supp. 13, 17 (S.D.N.Y.), modified on other grounds and appeal dismissed as to transfer order, 178 F.2d 866 (2d Cir.1950); see Herman v. Doug Frank Development Corp., 385 F.Supp. 767, 769 n. 10 (S.D.N.Y.1974); Johnson v. Smith Meal Co., 160 F.Supp. 208, 209 (E.D.N.Y.1958); Nocona Leather Goods Co. v. A.G. Spalding & Bros., Inc., 159 F.Supp. 269, 271 n. 3 (D.Del.1958); McCarley v. Foster-Milburn Co., 89 F.Supp. 643, 649 (W.D.N.Y.1950).
 
 
 19
 In short, Norcross has made no showing that the convenience of witnesses justifies depriving Alcoa of its chosen forum in its American domicile. The district court's finding to the contrary is completely without support in the record.
 
 
 20
 The other factor relief upon by the district court in granting defendant's motion to dismiss was defendant's inability to implead the pilot association in the Southern District of New York. Assuming that Norcross is sincere in its expressed intention of bringing a multi-million dollar action against the pilot because he was not Johnny-on-the-spot at the rendezvous point, there is no compelling reason why his must be done by way of impleader. Norcross has not shown that the "vouching in" of the pilot in the present action would not give the judgment entered herein the same binding effect in Trinidad as it would have in the United States. See, e.g., Robbins v. Chicago City, 71 U.S. (4 Wall.) 657, 674-75, 18 L.Ed. 427 (1866); Standard Oil Co. v. Robins Dry Dock & Repair co., 25 F.2d 339, 340 (E.D.N.Y.1928), aff'd, 32 F.2d 182 (2d Cir.1929). Once defendant's liability and the amount of plaintiff's damages have been determined, the issues left for resolution as between defendant and the pilot could be disposed of in a very short and inexpensive trial. Under these circumstances, the inability of Norcross to implead the pilot, whose liability, at best, is questionable, should not extinguish plaintiff's right to have its claim passed upon by a United States court. See Olympic Corp. v. Societe Generale, supra, 462 F.2d at 379.
 
 
 21
 Although the granting of a motion to dismiss on the ground of forum non conveniens is within the district court's sound discretion, this discretion must be exercised "with regard to what is right and equitable under the circumstances and the law." Mobil Tankers Co., S.A. v. Mene Grande Oil Co., supra, 363 F.2d at 613 (citing Langnes v. Green, 282 U.S. 531, 541, 51 S.Ct. 243, 75 L.Ed. 520 (1931)). Before defendant's motion to dismiss may be granted, it must show that it would be unfairly prejudiced by a denial. Klockner Reederei Und Kohlenhandel v. A/S Hakedal, 210 F.2d 754, 756 (2d Cir.), dismissed on appeal, 348 U.S. 801, 75 S.Ct. 17, 99 L.Ed. 633 (1954). Here, ther only prejudice shown in the record is that which will be sustained by the plaintiff.
 
 
 22
 Plaintiff's pier installation was damaged severely by defendant's ship through no fault of its own. The parties are agreed that, if plaintiff is denied access to a United States court and is required to sue in Trinidad, its recovery will be limited under Trinidad laws to approximately $570,000.[3] Looking past the window dressing, it is obvious that this is the basic reason why Norcross is seeking a change of forum. It has accomplished this result simply by filing two completely inadequate affidavits executed by one of its New York attorneys. I cannot believe that the ends of justice are served when the defendant is permitted to take several million dollars out of the pockets of Alcoa and its shareholders on such a flimsy showing.
 
 
 23
 I would reverse.
 
 ON PETITION FOR REHEARING
 
 24
 Before WATERMAN, TIMBERS and VAN GRAAFEILAND, Circuit Judges.
 
 VAN GRAAFEILAND, Circuit Judge:
 
 25
 We granted reargument because of appellant's contention that Gulf Oil Corp. v. Gilbert, 380 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), cited as authoritative precedent by both the district court and this Court,[1] does not, and should not, establish the correct standard for determining when American citizens should have access to their country's admiralty courts. Appellant argued also that our decision in this case conflicts with prior decisions of this Court. A thorough analysis of Gulf Oil, placed in its proper historical setting, convinced us that appellant's contentions had merit and that our holding should be re-examined.
 
 
 26
 Long before Gulf Oil, there existed a well-recognized rule of law that a court possessing jurisdiction had to exercise it unless there were compelling reasons why it should not. See, e.g., Kline v. Burke Consruction co., 260 U.S. 226, 234, 43 S.Ct. 79, 67 L.Ed. 226 (1922); Chicot County v. Arkansas, 148 U.S. 529, 534, 13 S.Ct. 695, 37 L.Ed. 546 (1893); Cohens v. Virginia, 19 (6 Wheat.) U.S. 264, 403, 5 L.Ed. 257 (1821). This appears also to have been the law of England. See Gibb, International Law of Jurisdiction, 212-13 (1926), cited in Williams v. Green Bay & W.R.R., 326 U.S. 549, 554 n. 4, 66 S.Ct. 284, 90 L.Ed. 31 (1946). Article III, section 2 of the Constitution extends the judicial power of the United States "to all Cases of admiralty and maritime Jurisdiction," and Congress by its various enabling enactments has placed admiralty and maritime jurisdiction in the district courts. See 28 U.S.C. Sec. 1333. Nonetheless, from an early date, district judges have exercised their discretion in deciding whetherto accept jurisdiction in an admiralty suit between foreigners. See canada Malting Co. v. Paterson Steamships, Ltd., 285 U.S. 413, 421-23, 52 S.Ct. 413, 76 L.Ed. 837 (1932). However, the rule mandating retention of jurisdiction was generally followed where the plaintiff was an American citizen seeking vindication of his own rights.[2] See Norwood v. Kirkpatrick, 349 U.S. 29, 41-42, 75 S.Ct. 544, 99 L.Ed. 789 (1955) (Clark, J., dissenting); The Neck, 138 F. 144, 148 (W.D.Wash.1905); The Falls of Keltie, 114 F. 357, 358 (N.D.Wash.1902). An American plaintiff was seldom if ever deprived of the opportunity to seek justice in the courts of his own country. See Swift & Co. Packers v. Compania Colombiana Del Caribe, S.A., 339 U.S. 684, 697, 70 S.Ct. 861, 94 L.Ed. 1206 (1950); Braucher, The Inconvenient Federal Forum, 60 Harv.L.Rev. 908, 921 (1947). Outside the field of admiralty law, even in cases where dismissal would not deprive the plaintiff of an American forum, it was generally assumed that a plaintiff had an absolute right of access to the courts of his place of residence. See Norwood v. Kirkpatrick, supra, 349 U.S. at 41, 75 S.Ct. 544 (Clark, J., dissenting); Barrett, The Doctrine of Forum Non Conveniens,J 35 Cal.L.Rev. 380, 390 (1947).
 
 
 27
 This, then, was the general state of the law when Gulf Oil was decided. Because that case was a common law negligence action brought in the Southern District of New York by a Virginia resident against a Pennsylvania corporation, the Court did not undertake to modify the settled practice of giving favored jurisdictional treatment to resident plaintiffs. The Court's citation of Gregonis v. Philadelphia & Reading Coal & Iron Co., 235 N.Y. 152, 139 N.E. 223 (1923), which held that New York courts could not refuse to exercise jurisdiction in a tort action by a resident against a non-resident, demonstrated the Court's recognition of the fact that, as of that date, forum non conveniens was applied generally to non-resident plaintiffs. This was demonstrated further by the Court's statements that "[t]he principle of forum non conveniens is simply that a court may resist imposition upon its jurisdiction" and that "the open door may admit those who seek not simply justice but perhaps justice blended with some harassment." 330 U.S. at 507, 67 S.Ct. at 842 (emphasis added). In short, Gulf Oil dealt with a situation in which the plaintiff was a non-resident, and the Court's holding should be considered in this light.[3]
 
 
 28
 On the same day that the Court decided Gulf Oil it also decided Koster v. Lumbermens Mutual Casualty Co., 330 U.S. 518, 67 S.Ct. 828, 91 L.Ed. 1067 (1947). This case had also been dismissed below on the ground of forum non conveniens. It was a derivative action brought in the Eastern District of New York by a policyholder of the nominal corporate defendant against the corporation's president and others. The plaintiff was a resident of the Eastern District of New York and the defendants were all domiciled in Illinois. Because of the peculiar nature of derivative actions the Court affirmed the dismissal of the New York action, stating that the plaintiff was only one of "hundreds of potential plaintiffs, all equally entitled voluntarily to invest themselves with the corporation's cause of action and all of whom could with equal show of right go into their many home courts" and therefore the balance of conveniences indicated that it would be proper to have this case tried in Illinois rather than in the Eastern District of New York.
 
 
 29
 While so stating and so ruling, the Court observed, however, in an observation pertinent to the case before us that "[w]here there are only two parties to a dispute, there is good reason why it should be tried in the plaintiff's home forum if that has been his choice", and that plaintiff should not be deprived of his choice except upon a clear showing of such oppressiveness and vexation to the defendant as to be out of all proportion to plaintiff's convenience. Id. at 524, 67 S.Ct. at 831.
 
 
 30
 This Court should look to the reasoning of Koster, rather than of Gulf Oil, in determining the rights of a resident plaintiff. See Swift & co. Packers v. Compania Colombiana Del Caribe, S.A., supra, 339 U.S. at 697, 70 S.Ct. 861. Moreover,where dismissal of plaintiff's suit will relegate him to litigation in the courts of a foreign country, the Koster standards should be strictly applied. That is the courts which this Court and other circuits have followed. Before a resident citizen suing in his own right will be dispatched to the courts of a foreign country, there must be positive evidence of unusually extreme circumstances making it materially unjust to the defendant that jurisdiction be retained in the American courts. Leasco Data Processing Equipment Corp. v. Maxwell, 468 F.2d 1326, 1344 (2d Cir.1972); Mobile Tankers Co., S.A. v. Mene Grande Oil Co., 363 F.2d 611, 614 (3d Cir.), cert. denied, 385 U.S. 945, 87 S.Ct. 318, 17 L.Ed.2d 225 (1966); Burt v. Isthmus Development Co., 218 F.2d 353, 357 (5th Cir.), cert. denied, 349 U.S. 922, 75 S.CT. 661, 99 L.Ed. 1254 (1955). Inconvenience to the defendant will not satisfy this criterion without a further showing of an intent by the plaintiff to vex or harass. Thomson v. Palmieri, 355 F.2d 64, 66 (2d Cir.1966); Founding Church of Scientology v. Veriag, 175 U.S.App.D.C. 402, 409, 536 F.2d 429, 436 (D.C.Cir.1976); Hoffman v. Goberman, 420 F.2d 423, 426 (3rd Cir.1970); Altman v. Central of Ga. R.R., 124 U.S.App.C.D. 155, 157, 363 F.2d 284, 286 (D.C.Cir.), cert. denied, 385 U.S. 920, 87 S.Ct. 231, 17 L.Ed.2d 144 (1966); Mobil Tankers Co., S.A. v. Mene Brande Oil Co., supra, 363 F.2d at 614. As this Court stated in Thomson v. Palmieri, supra, 355 F.2d at 66, "we should respect plaintiff's choice of forum as long as no harassment is intended." See Top Form Mills, Inc. v. Sociedad National Industria Applicazioni Viscosa, 428 F.Supp. 1237, 1253 (S.D.N.Y.1977).
 
 
 31
 Suit in an American court could not have come as a surprise to defendant. When defendant accepted the benefits attending the use of American port facilities, it must have been familiar with the age-old maritime tradition that gives libelants in rem jurisdiction where the vessel is found. See Kloeckner Reederei Und Kohlenhandel v. A/S Hakedal, 210 F.2d 754, 756 (2d Cir.), appeal dismissed per stipulation, 348 U.S. 801, 75 S.Ct. 17, 99 L.Ed. 633 (1954); Motor Distributors, Ltd. v. Olaf Pedersen's Rederi A/S, 239 F.2d 463, 467 (5th Cir.1956), cert. denied, 353 U.S. 938, 77 S.Ct. 816, 1 L.Ed.2d 760 (1957); cf. Article I(1)(b) of the Brussels Convention of 1952. Even if plaintiff were a foreigner, defendant would not have been entitled to dismissal of the district court suit unless it established that otherwise it would be unfairly prejudiced. Kloeckner Reederei Und Kohlenhandel v. A/S Hakedal, supra, 210 F.2d at 756. Plaintiff is in fact a United States citizen, and its choice of a local forum is entitled therefore to greater consideration than if it were made by a non-resident alien. Swift & Co. Packers v. Compania, Colombiana Del Caribe, S.A., supra, 339 U.S. at 697, 70 S.Ct. 861. American courts "are maintained to give redress primarily to their own citizens." United States Merchants' & Shippers' Ins. Co. v. A/S Den Norske Afrika Og Australie Line, supra, 65 F.2d at 392; see Burt v. Isthmus Development Co, supra, 218 F.2d at 356. They should consider the convenience of American citizens, whose taxes keep the courts in existence. Douglas v. new York, N.H. & H.R.R., 279 U.S. 377, 387, 49 S.Ct. 355, 73 L.Ed. 747 (1929).
 
 
 32
 In the instant case, appellant's convenience will be served by suit in the United States because its damaged dock is being repaired by a United States contractor under the supervision of appellant's United States employees. This was sufficient to negate any charge of vexation, oppression, or harassment, and the district court made no finding that appellant had any such intention. The district court's weighing-of-inconvenience test, which led it to conclude that the litigation could be conducted "most expeditiously and inexpensively in Trinidad", was an improper basis for dismissal.
 
 
 33
 Upon reconsideration, the judgment appealed from is reversed.
 
 TIMBERS, Circuit Judge, dissenting:
 
 34
 Until today's majority decision on a petition for rehearing addressed to the panel, the issue throughout this litigation in this Court has been whether the district court abused its discretion, within the meaning of Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947), in dismissing the action on the ground of forum non conveniens. That was the issue which was fully briefed and argued before us on April 4, 1978. That was the issue to which all three opinions were addressed in our 2-1 panel decision of August 31, 1978 affirming the district court's exercise of discretion. 654 F.2d 165 (2 Cir.1978).[1]
 
 
 35
 Now on a petition for rehearing--after the most cursory briefing[2] and no oral argument at all--the present majority holds for the first time that the Gilbert standard "does not, and should not, establish the correct standard for determining when American citizens should have access to their country's admiralty courts." 654 F.2d at 170. The majority then proceeds to carve out for those litigants who invoke the admiralty and maritime jurisdiction of the federal courts an absolute immunity from dismissal on the ground of forum non conveniens--no matter how conclusively the long recognized balancing factors may point toward another more appropriate forum. This special privilege which the majority creates in the courts of the United States in favor of one class of litigants--chiefly, marine insurance underwirters[3]--not only is unprecedented; it strikes a blow at our most precious heritage of equal justice for all. I dissent.
 
 I.
 
 36
 I do not believe that in the courts of the United States the American residence of a plaintiff is, or should be, an inflexible barrier to dismissal on the ground of forum non conveniens when all the other indicia of an appropriate forum are lacking.
 
 
 37
 The power of a federal court to decline to exercise its jurisdiction in an appropriate case in reliance on the doctrine of forum non conveniens has been recognized since the earliest days of the Republic. See, e.g., Gilbert, supra. It extends to admiralty as well as to all other fields of law. Canada Malting Co. v. Peterson Steamships, Ltd., 285 U.S. 413, 421-23 (1932).
 
 
 38
 The doctrine of forum non conveniens is not a neat divider, like a fence, which separates the cases where jurisdiction should be retained from those where it should not. Instead, it meanders, like a river; and as a river with time may change its course by the erosion and build-up of its banks, so too the judge-made doctrine of forum non conveniens develops new twists and bends, shrinking and growing as it confronts novel factual situations. As the Supreme Court stated in the seminal forum non conveniens case:
 
 
 39
 "Wisely, it has not been attempted to catalogue the circumstances which will justify or require either grant or denial of remedy. The doctrine leaves much to the discretion of the court to which plaintiff resorts, and experience has not shown a judicial tendency to renounce one's own jurisdiction so strong as to result in many abuses." (footnote omitted) Gilbert, supra, 330 U.S. at 508.
 
 
 40
 While the Court eschewed a bright line rule for the doctrine, it did enunciate the factors to be considered in applying it: ease of access to sources of proof; availability of compulsory process for unwilling witnesses; the cost of obtaining attendance of willing ones; the opportunity to view the premises; the need for application of an unfamiliar foreign law; and others.[4] The evaluation and balancing of these factors is a factual matter necessarily committed to the judgment of the district court. See Restatement (Second) of Conflict of Laws Sec. 84, Comment b (1971). Its determination should not be set aside lightly.
 
 
 41
 Here, that determination was based on a record consisting chiefly of affidavits--a procedure long recognized as acceptable and the procedure followed from time immemorial in the Southern District of New York. See, e.g., Koster v. Lumbermans Mutual Casualty Co., 330 U.S. 518, 531 (1947); Vanity Fair Mills v. T. Eaton Co., 234 F.2d 633, 645 (2 Cir.), cert denied, 352 U.S. 871 (1956). The record established that the case involved an accident that occurred in Trinidad. The damage to Alcoa's pier was in Trinidad. Regardless of where the repair crews may come from, the repair work will take place in Trinidad. Apart from experts and the ship's crew, whatever witnesses may be called are in Trinidad. The alleged tortious conduct of defendant Norcross and the master of the Nordic Regent took place in Trinidad, as did the alleged negligent action on the part of the local pilots' association in Trinidad. The association may be involved and might be impleaded if the case is tried in Trinidad because the presence of a pilot on the Nordic Regent was required by the statute law of Trinidad and Tobago. The law of Trinidad and Tobago also presumably determines the duty of care owed by the various parties.[5] Finally, the tides and currents around Trinidad may figure prominently in the trial of the case. Under these circumstances, I fail to see any abuse of discretion whatsoever on the part of Judge Conner in dismissing on the ground of forum non conveniens,[6] since clearly this is a case that should be tried in Trinidad, where the accident occurred, the damage exists, the witnesses will be found, and whose law will apply.[7]
 
 II.
 
 42
 This case is said to be different, however, because plaintiff Alcoa is a New York corporation and commenced this action in the Southern District of New York. It is true that our courts have been more solicitous of opposition to a forum non conveniens dismissal motion when its grant will force a United States citizen to a foreign forum for its day in court. Olympic Corp. v. Societe Generale, 462 F.2d 376, 378 (2 Cir.1972); Vanity Fair Mills v. T. Eaton Co., supra, 234 F.2d at 645.[8] But that is not to say that American residence gives a plaintiff an absolute right to be in the federal court, without regard to the circumstances of the particular case. 15 Wright, Miller and Cooper, Federal Practice and Procedure: Jurisdiction Sec. 3828, at 180 nn. 16-17 (1976); see Vanity Fair Mills v. T. Eaton Co., supra, 234 F.2d at 645 (trademark infringement).
 
 
 43
 Only recently we have acknowledged that, while there is "some support" for the proposition that "our courts should be quite cautious in dismissing on forum non conveniens grounds when suit is brought by an American citizen," forum non conveniens dismissal still may be appropriate. Farmanfarmaian v. Gulf Oil Corp., 588 F.2d 880, 882 (2 Cir.1978) (Feinberg, J.).[9] In that case, an Iranian citizen sued for breach of a contract between him and an Iranian subsidiary of various American and European oil companies. The contract was entered into in Iran. It involved an option to purchase an Iranian company. Evidence relating to the breach, and particularly the role of the Iranian government, was to be found in Iran. Iranian law was to govern. Although the plaintiff was a foreign national, we recognized that, under bilateral treaties between the United States and Iran, he was entitled to access to the United States courts on a basis "no less favorable" than that available to Americans, and therefore should enjoy the same consideration as a domestic plaintiff in resisting a forum non conveniens dismissal. We nevertheless affirmed Judge Carter's conditional forum non conveniens dismissal, thus allowing the action to proceed in Iran and noting that Judge Carter had "applied the same forum non conveniens standards as would be applied were the plaintiff an American citizen." Id. at 882. It follows, if our most recent holding means anything, that American residence is not an impenetrable shield against dismissal on grounds of forum non conveniens.
 
 
 44
 Indeed, in view of the statutory codification of the doctrine which permits transfer of an action from one district court to another essentially on grounds of forum non conveniens, 28 U.S.C. Sec. 1404 (1976), the result of guaranteeing an American forum in admiralty cases where there is an American plaintiff would be to strip the doctrine virtually to a state of total ineffectiveness, since one of the few areas where it is still needed is where a foreigner and an American are involved in a maritime accident abroad and the accident has no nexus whatsoever to the district where the American party chooses to commence the action. I think it would be a grave mistake to write such a talismanic approach into a part of the law intended to promote the courts' flexibility.[10] Cf. Moore's Federal Practice Sec. 1404 at JC-601 (1977) (discussing 28 U.S.C. Sec. 1404). Moreover, the trend of the common law would appear to be away from such a view. While Mr. Justice Clark in 1955 could find but a single jurisdiction--Scotland--which allowed a forum non conveniens type of dismissal against a resident plaintiff, Norwood v. Kirkpatrick, 349 U.S. 29, 33 (1955) (Clark, J., dissenting), many jurisdictions do so now. One of the most dramatic shifts is that of the State of New York as reflected in Silver v. Great American Insurance Co., supra. Finally, the Supreme Court never has considered local residence a guarantee of a local forum in all matters. See, e.g., Koster v. Lumbermans Mutual Casualty Co., supra, 330 U.S. at 525.
 
 III.
 
 45
 The question therefore boils down to whether, in the instant case, sufficient prejudice has been shown to overcome the admittedly high barrier to transferring an action by an American citizen to a foreign forum for trial. See Restatement (Second) of Conflict of Laws Sec. 84, Comment f (1971). The point is not whether we as trial judges would have reached the same conclusion.[11] The point is that Judge Conner held, upon balancing the relevant factors, that dismissal on the ground of forum non conveniens was warranted. I am not persuaded that in doing so he abused his discretion so as to warrant reversal as a matter of law.
 
 
 46
 Neither Koster v. Lumbermans Mutual Casualty Co., supra, nor Swift & Co. Packers v. Compania Colombiana Del Caribe, S.A., 339 U.S. 684 (1950), compels reversal. Although the Court in Koster set a high standard for dismissal in a resident plaintiff situation, 330 U.S. at 524, the outcome of the case nevertheless was to dismiss a New York plaintiff from the New York federal courts. In Swift the Court recognized that a forum non conveniens motion against a resident plaintiff in an admiralty suit "brings into force considerations very different" from those in all-foreigner suits. 339 U.S. at 697. But it reversed and remanded not merely because "[t]he District Court gave no indication that it recognized such considerations," id., or because "[i]ts opinion indicates that in so far as it may have exercised discretion to decline jurisdiction it was moved to do so by its view that such jurisdiction does not exist." Id. (emphasis added). The essential holding of the Court in Swift was that it was improper to send the American plaintiff to a foreign forum deprived of the security it would otherwise enjoy and without an assurance that the defendant would appear. It reversed on those grounds. In the instant case, neither consideration has any bearing, as Judge Conner's findings make abundantly clear. 435 F.Supp. at 12.
 
 
 47
 Finally, the fact that Trinidad law may limit the damages recoverable by Alcoa does not mean that it would be stripped of any remedy by the application of the doctrine of forum non conveniens. It is well settled that a different law of damages is an insufficient basis for avoiding such a dismissal. The facts in Canada Malting Co. v. Peterson Steamships, Ltd., supra, involved such a situation; so did Kloeckner Reederei und Kohlenhandel v. A/S Hakedal, 210 F.2d 754, 757 (1 Cir.), appeal dismissed by stipulation, 348 U.S. 801 (1954).
 
 
 48
 Accordingly, I would reaffirm our prior decision in this case, 654 F.2d 165 (2 Cir.1978), which in turn affirmed the district court's exercise of discretion in dismissing this action on the ground of forum non conveniens. From the majority's refusal to do so, I respectfully dissent.
 
 
 
 [1]
 Because the district court's decision was based solely upon affidavits without oral testimony, this Court is in as good a position as was the district court to determine whether dismissal of plaintiff's action was warranted. We may therefore make a de novo review of the record to determine whether the district court's exercise of discretion was proper. Medical Society v. Toia, 560 F.2d 535, 537 (2d Cir.1977); San Filippo v. United Brotherhood of Carpenters and Joiners, 525 F.2d 508, 511 (2d Cir.1975); Mobil Tankers Co., S.A. v. Mene Grande Oil Co., 363 F.2d 611, 613 (3rd Cir.1966)
 
 
 [2]
 This is probably an unwarranted assumption. See States Marine Lines, Inc. v. M/V Kokei Maru, supra, 180 F.Supp. at 257-58; -Lesser v. Chevalier, 138 F. Supp. 330, 331 (S.D.N.Y. 1956); -The Saudades, 67 F.Supp. 820, 821 (E.D.Pa.1946)
 
 
 [3]
 In weighing the prejudice to the plaintiff from removal to a foreign jurisdiction, I see little difference between the foreign jurisdiction's limitation on the time for suit or on the amount of recovery. The former precludes all recovery, the latter a substantial portion of it. It is well settled that an action will not be dismissed if the statute of limitation precludes suit in the proposed forum. Norwood v. Kirkpatrick, supra, 349 U.S. at 31, 75 S.Ct. 544; Fletero v. Arias, 206 F.2d 267, 270 (4th Cir.1953); All States Freight v. Modarelli, supra, 196 F.2d at 1011. A substantial limitation on the amount of recovery should be treated in the same manner. See Fitzgerald v. Texaco, Inc., 521 F.2d 448, 458 (2d Cir.1975), cert denied, 423 U.S. 1052, 96 S.Ct. 781, 46 L.Ed.2d 641 (1976) (Oakes, J., dissenting)
 
 
 [1]
 After evaluating the factors found significant in Gulf Oil, the district court concluded that "the litigation of this case can be conducted most expeditiously and inexpensively in Trinidad." We affirmed, relying upon the district court's consideration of the relevant factors set forth in Gulf Oil and the district court's finding of a "significant imbalance" in favor of the defendant
 
 
 [2]
 This Court, among others, recognized the right of access to American admiralty courts by an American suing in his own right in those cases where it refused to extend the same right to the American subrogee or assignee of a foreign claimant. The Mandu, 102 F.2d 459, 462 (2d Cir.1939); United States Merchants' & Shippers' Ins. Co. v. A/S Den Norske Afrika Og Australie Line, 65 F.2d 392, 393 (2d Cir.1933); see Asiatic Petroleum Corp. v. Italia Societa Anonima Di Navigazione, 119 F.2d 610, 613 (3rd Cir.1941); Wittig v. Canada S.S. Lines, Ltd., 59 F.2d 428, 430 (W.D.N.T.1932); Goldman v. Furness, Withy & Co., 101 F. 467, 468 (S.D.N.Y.1900)
 
 
 [3]
 It is clear from the Court's subsequent opinion in Swift & Co. Packers v. Compania Colombiana Del Caribe, S.A., supra, 339 U.S. at 697, 70 S.Ct. 861 (1950), that it did not consider Gulf Oil to have answered the question whether United States admiralty courts might decline jurisdiction over libels brought by United States citizens
 
 
 [1]
 In view of the sputtering course this case has taken in our Court, I think it is important briefly to recount the proceedings here for their bearing on the central issue of whether the district court abused its discretion
 The majority refers to the "order of affirmance" which it has withdrawn. It is true that the proposed order of affirmance, holding that the district court did not abuse its discretion in dismissing on the ground of forum non conveniens, was withdrawn to permit a dissenting opinion to be filed.
 Eventually a short one page majority opinion was filed on August 31, 1978 affirming on the ground that "the district court did not abuse its discretion" (Timbers, J.). 654 F.2d at 166. An even shorter concurring opinion was filed at the same time which concluded, "I cannot hold with my dissenting colleague that Judge Conner abused the discretion vested in him to exercise and that we should in this case reverse the order below on the ground of such an abuse." (Waterman, J.). Id. A dissenting opinion also was filed, stating, "Because I believe that the district court abused its discretion in dismissing, I can not concur in my brothers' decision to affirm." (Van Graafeiland, J.). Id. (emphasis added).
 There followed a petition for rehearing, see note 2 infra, to which today's majority and dissenting opinions are addressed.
 
 
 [2]
 Alcoa's petition for rehearing, submitted last and in excess of the length provided for by our rules, nevertheless was accepted by an order of our Court dated September 18, 1978. After deciding that Norcross Chipping Co., Inc., the appellee, should be permitted to respond to the petition for rehearing, Norcross on September 21 was granted until September 27--4 business days--to get on its answering papers
 Three weeks later, On October 16, an amicus brief supporitng the petition for rehearing was filed by the American Institute of Marine Underwriters (AIMU). This amicus brief appears to have provided substantial support for today's majority opinion, particularly for its rejection of the Gilbert exercise of discretion standard.
 No opportunity was afforded to appellee Norcross to respond to the AIMU amicus brief, despite the majority's significant change of the ground of its decision.
 As is customary in our Court, no oral argument was heard on the petition for rehearing.
 
 
 [3]
 See AIMU amicus brief, pages 1-2:
 "In filing this brief amicus curiae AIMU is acting in support of the American marine insurance market."
 "[AIMU] is a national trade association of 122 insurance companies....." Id. at 1.
 "AIMU's member companies underwrite more than 90% of the marine insurance written in the United States....." Id. at 1.
 
 
 [4]
 While the majority correctly urges that we consider "the convenience of American citizens, whose taxes keep the courts in existence," I suggest by the same token that we not overlook the convenience of the courts: "Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin." Gilbert, supra, 330 U.S. at 508. Clogged courts are costly for taxpayers and litigants in terms of time as well as taxes
 
 
 [5]
 See Restatement (Second) of Conflict of Laws Sec. 147 (1971). The problem of Buchanan v. Rucker, 9 East 192 (K.B.1808), "Can the island of tobago pass a law to bind the rights of the whole world?" (per Lord Ellenborough, C.J.) is thus not posed
 
 
 [6]
 As a result of the majority's shifting of the ground of its decision, thus abandoning the exercise of discretion standard, we seem to have lost sight of Judge Conner's thoughtful, concise opinion which carefully balanced the factors that should be considered in applying the doctrine of forum non conveniens under Gilbert--which everyone, including Judge Conner, thought was controlling until today's majority decision
 Judge Conner's excellent district court opinion has been reported at 453 F.Supp. 10 (S.D.N.Y.1978).
 
 
 [7]
 The instant case is strikingly similar to Texaco Trinidad v. Astro Evito Navegacion, S.A., 437 F.Supp. 331 (S.D.N.Y.1977), where a maritime action was dismissed on the ground of forum non conveniens
 
 
 [8]
 Although we followed the Vanity Fair standard in Leasco Data Processing Equipment Corp. v. Maxwell, 468 F.2d 1326, 1344 (2 Cir.1972), it should be noted that Judge Friendly recognized that the forum non conveniens issue was not among those certified by the district court and therefore the issue "technically ... may not be before us." 468 F.2d at 1344
 
 
 [9]
 Until today's majority opinion, Gilbert has been followed without deviation by our Court in a long line of decisions right down to the present time. In Addition to Farmanfarmaian, supra, see also Schertenleib v. Traum, 589 F.2d 1156, 1164-66 (1978) (Feinberg, J.)
 
 
 [10]
 In Silver v. Great American Insurance Co., 29 N.Y.2d 356, 361, 278 N.E.2d 619, 622, 328 N.Y.S.2d 398, 403 (1972), Chief Judge Fuld put it this way:
 "Although such residence [of one of the parties] is, of course, an important factor to be considered, forum non conveniens relief should be granted when it plainly appears that New York is an inconvenient forum and that another is available which will best serve the ends of justice and the convenience of the parties. The great advantage of the doctrine--its flexibility based on the facts and circumstances of a particular case--is severely, if not completely, undercut when our courts are prevented from applying it solely because one of the parties is a New York resident or corporation."
 Especially when corporate citizenship is involved, the claim to an absolute right to sue in the home forum must be scrutinized with special skepticism. As the Supreme Court stated in Koster:
 "Place of corporate domicile ... might be entitled to little consideration under the doctrine of forum non conveniens, which resists formalization and looks to the realities that make for doing justice." Koster v. Lumbermans Mutual Casualty Co., supra, 330 U.S. at 528.
 While I recognize that Alcoa's link to New York is a substantial one, unlike the purely pro forma sort the Supreme Court worried might occur under modern corporate laws, id.; see, e.g., Texaco Trinidad v. Astro Exito Navegacion, S.A., supra, 437 F.Supp. at 333-34, it is not without significance that the particular Alcoa operation here involved appears to have been centered in Trinidad. While it may not come as a surprise to Norcross to be sued in New York, as the majority points out, where it has a general agent, it must assuredly can be no surprise to Alcoa that Trinidad law may limit its recovery to $570,000. Being a prudent corporation, it either has, or easily could have had, adequate insurance to cover such additional risk.
 
 
 [11]
 See Judge Waterman's concurring opinion of August 31, 1978 in the instant case. 654 F.2d at 166
 
 
 [2]
 This is probably an unwarranted assumption. See States Marine Lines, Inc. v. M/V Kokei Maru, supra, 180 F.Supp. at 257-58; Lesser v. Chevalier, 138 F.Supp. 330, 331 (S.D.N.Y.1956); The Saudades, 67 F.Supp. 820, 821 (E.D.Pa.1946)