**SHEPARD NILES CRANE & HOIST CORPORATION, a Pennsylvania Corporation, Plaintiff,**

v.

**FIAT, S.p.A., an Italian Corporation, and Teksid, S.p.A., an Italian Corporation, Defendants.**

No. Civ–78–506.

United States District Court,
W. D. New York.

Oct. 23, 1979.

Hodgson, Russ, Andrews, Woods & Goodyear, Buffalo, N. Y., Reed, Smith, Shaw & McClay, Pittsburgh, Pa. (John E. Dickinson, Buffalo, N. Y., Paul A. Manion, and Anthony J. Basinski, Pittsburgh, Pa., of counsel), for plaintiff.

Greenbaum, Wolff & Ernst, New York City, Saperston, Day & Radler, Buffalo, N. Y. (Charles D. Bock, New York City, Thomas F. Segalla, Buffalo, N. Y., of counsel), for defendants.

CURTIN, Chief Judge.

This is a diversity action in which the plaintiff seeks the unpaid balance due on a contract to supply a hot metal carrier system to Fiat for its foundry in Crescentino, Italy. Fiat has counterclaimed for breach of contract and warranty. The case is now before the court on defendants' motion to dismiss based on *forum non conveniens.*

The plaintiff has its principal office and its only manufacturing plant in Montour Falls, New York, where it fabricates electrical cranes, hoists, and related products. By a 46-page purchase order dated December 4, 1973, Fiat offered to purchase from the plaintiff, f. o. b. Montour Falls, New York, a hot metal carrier system manufactured to the defendant's specifications. The total purchase price was approximately $2.1 million.

The purchase order was in English except for some preprinted material on the back side of the cover page, which was in Italian. The front side, the signature page, was signed by Harold H. Seymour, then vice president of sales for Shepard Niles, in the lower right-hand corner where a signature block was provided. Above the signature block, the form stated that the undersigned agreed with the conditions reported on the back, including Article 14. Translated into English by the defendant, Article 14 states:

14. COMPETENCE: For any controversy, the competent judicial authority is that of Turin.

In addition, Articles 5, 7, and 8 on the back expressly refer to Italy's Civil Code in setting forth the terms of delivery, inspection, and right of rejection.

The hot metal carrier system was intended to be cased in the foundry to transport ladles containing molten iron on monorails from the furnaces where the iron is melted to the molds into which it is poured. The purchase order was the product of almost two years of negotiations between the parties which took place both in the United States and at Fiat's foundry in Crescentino. Shepard Niles accepted the offer by a letter dated February 13, 1974. Eighty-five percent of the contract price was to be paid upon completion of shipment of the goods and fifteen percent upon final acceptance of the system.

Fiat purchased additional parts for the system from other suppliers and engaged its own contractors to install the system. However, the plaintiff agreed to furnish two engineers to supervise installation and stack-up of the mechanical and electrical components for the system at the foundry in Italy.

After accepting the order, Shepard Niles began manufacturing the required parts at Montour Falls. In the summer of 1974, shipping began. By August of 1976, Fiat had paid Shepard Niles 98% of the contract price. By August of 1975, approximately 40% of the system had been installed by Fiat and its contractors with supervisory assistance from Shepard Niles. However, difficulties were encountered in installing the system, giving rise to this litigation.

The plaintiff alleges that Fiat delayed completion of the work by diverting its contractors from necessary work on one section of the system to other sections of the system, that it failed to provide personnel for training in the operation of the system, that it frustrated testing of the system by maintaining full-scale production at the foundry, and that it demanded costly modifications of the system not contemplated by the contract. The plaintiff continued to work on the system until June 30, 1978, and then withdrew all of its employees from the foundry. In the complaint, the plaintiff demands $100,000 for services performed under the contract, $175,000 for expenses related to these services, $11,845 for equipment delivered under an unrelated contract, and damages for injury to reputation. It also seeks a declaratory judgment that Shepard Niles has performed its obligations under the contract. In response, Fiat counterclaims for damages, claiming

that Shepard Niles breached the contract by not supplying an operable system.

Any discussion of *forum non conveniens* must begin with the Supreme Court's decision in *Gulf Oil Co. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). There, a resident of Virginia sued a Pennsylvania corporation in federal district court in New York to recover damages for a fire which destroyed the plaintiff's warehouse in Virginia. Jurisdiction was based on diversity. Applying the doctrine of *forum non conveniens*, the Supreme Court upheld dismissal of the suit. In its opinion, the Court listed a number of factors which should be taken into account by the trial judge in exercising his discretion to dismiss. These included the relative ease of access to sources of proof, the availability of compulsory process for attendance of witnesses, the cost of obtaining attendance of willing witnesses, the need to view the premises, the advantages and obstacles to a fair trial, court congestion, the relationship between the forum and the dispute, and the necessity of applying another forum's laws. *Id.*, at 508–09, 67 S.Ct. 839. Essentially, the Court in *Gulf Oil* stated that the trial court was vested with broad discretion to consider the convenience of witnesses and the ends of justice in ruling on motions based on *forum non conveniens*.

Although *Gulf Oil* did not involve a resident plaintiff suing in the home forum, its companion case, *Koster v. (American) Lumbermens Mutual Casualty Co.*, 330 U.S. 518, 67 S.Ct. 828, 91 L.Ed. 1067 (1947), did. There, the Court upheld dismissal of a derivative suit brought in the policyholder's home district in New York against Illinois defendants. Discussing the weight to be given the plaintiff's choice of his home forum, the Court stated:

Where there are only two parties to a dispute, there is good reason why it should be tried in the plaintiff's home forum if that has been his choice. He should not be deprived of the presumed advantages of his home jurisdiction except upon a clear showing of facts which either (1) establish such oppressiveness and vexation to a defendant as to be out of all proportion to plaintiff's convenience, which may be shown to be slight or nonexistent, or (2) make trial in the chosen forum inappropriate because of considerations affecting the court's own administrative and legal problems. In any balancing of conveniences, a real showing of convenience by a plaintiff who has sued in his home forum will normally outweigh the inconvenience the defendant may have shown.

*Id.* at 524, 67 S.Ct. at 831. Since the plaintiff was only asserting a derivative claim which all other policyholders would be equally qualified to assert and since the plaintiff's own interest in the case was small, the Court upheld a finding that the balance of conveniences favored Illinois state court over the Eastern District of New York.

Shepard Niles asserts that the court should not exercise its discretion to dismiss because Shepard Niles resides in this district. I agree that the plaintiff's residence is an important factor to take into account in ruling on the motion. However, the Second Circuit appears to disagree as to the amount of weight which should be given to the plaintiff's residence.

In *Alcoa Steamship Co. v. M/V Nordic Regent*, No. 78–7054 (2d Cir. Jan. 10, 1979) *[Alcoa II]*, Judge Van Graafeiland, over a strong dissent by Judge Timbers, articulated the test as follows:

[W]here dismissal of plaintiff's suit will relegate him to litigation in the courts of a foreign country, the *Koster* standards should be strictly applied. That is the course which this Court and other circuits have followed. Before a resident citizen suing in his own right will be dispatched to the courts of a foreign country, there must be positive evidence of unusually extreme circumstances making it materially unjust to the defendant that jurisdiction be retained in the American courts. Inconvenience to the defendant will not satisfy this criterion without a further showing of an intent by the plaintiff to vex or harass.

slip op. at 5372. Applying this test, the court upon reconsideration vacated its prior opinion in *Alcoa Steamship Co. v. M/V Nordic Regent* (2d Cir. 1978) *[Alcoa I]*, and reversed the district court's dismissal of the admiralty complaint.

In his dissent, Judge Timbers stated that American residence should not provide an "impenetrable shield" against dismissal and quoted with approval the New York Court of Appeal's decision in *Silver v. Great American Insurance Co.*, 29 N.Y.2d 356, 328 N.Y.S.2d 398, 403, 278 N.E.2d 619, 622 (1972). Slip op. at 5380–81, n.10. Under *Silver,* the plaintiff's residence is an important factor, but is not given quite as much weight as *Alcoa II* appears to give it. According to *Silver,* the overriding questions are nevertheless the convenience of the parties and the best ends of justice.[1]

In *Farmanfarmaian v. Gulf Oil Corp.*, 588 F.2d 880 (2d Cir. 1978), a different panel approved applying a more lenient standard in affirming dismissal of a contract action by a foreign national against an Iranian subsidiary of various American and European oil companies. Since by treaty the plaintiff was entitled to access to American courts as if he were a United States citizen, the court noted that he enjoyed the same consideration as a domestic plaintiff in resisting a *forum non conveniens* motion, citing *Olympic Corp. v. Societe Generale*, 462 F.2d 376, 378 (2d Cir. 1972). However, since all relevant events took place in Iran, most of the witnesses were there, and Iranian law applied, the court affirmed dismissal of the case.

*Olympic Corp.* stated that the plaintiff's choice of forum normally should not be disturbed unless the balance of inconveniences strongly favors the defendant and that· "the balance must be even stronger when the plaintiff is an American citizen and the alternative forum is a foreign one." *Id.* But it did not require a showing of intent to vex or harass.

The defendant argues that *Alcoa II* applies only to admiralty cases and that *Farmanfarmaian* governs Fiat's *forum non conveniens* motion. But the plaintiff points out that the discussion of the issue in *Alcoa II* is not restricted to admiralty cases. It argues that the defendant, in addition to showing that the balance of conveniences swings against the plaintiff, has the burden of showing that the suit was instituted to vex or harass or that extreme circumstances make it materially unjust to retain jurisdiction.

■ Moreover, it is important to remember that the courts have an obligation to consider the effect on commerce of the application of certain traditional legal principles to international commercial disputes. In the recent case of *Ionescu v. E. F. Hutton & Co. (France) S. A.*, 465 F.Supp. 139 (S.D.N.Y.1979), decided after *Alcoa II*, an American plaintiff resident in New York brought suit against a French corporation, seeking brokerage commissions for helping to arrange a loan from Saudi Arabia to the Government of France or to some French national corporations. Despite the plaintiff's having made a series of phone calls from New York in pursuance of the transaction, the court, per Pollack, J., dismissed the complaint on the ground of *forum non conveniens.* The court concluded that the plaintiff's choice of forum constituted an attempt to vex and harass "by selecting a forum so as to deprive the defendant of virtually all reliable evidence and knowledgeable witnesses." *Id.* at 147. In addition, the court noted that "international trade by American concerns will not be assisted and may even be hindered if 'we insist on a parochial concept that all disputes must be resolved under our laws and in our courts.'" *Id.* at 146, *quoting The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 9, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972).

---

1. It is still unsettled ·whether state or federal law of *forum non conveniens* is to be applied in a diversity case. The Second Circuit Court of Appeals, however, has determined that New York law and the federal law of *forum non* conveniens are sufficiently similar that the court need not decide which applies. *Schertenleib v. Traum*, 589 F.2d 1156, 1162, n.13 (2d Cir. 1978).

■ It is not necessary to decide whether the more stringent standards enunciated in *Alcoa II* apply to this case. Nor is it necessary for me to determine what the impact on international commerce would be from a decision not to dismiss. This is because I find that the defendant has produced "positive evidence of unusually extreme circumstances making it materially unjust to the defendant that jurisdiction be retained in the American courts." *Alcoa II*, slip op. at 5372. The reasons for this finding are set forth below.

A primary consideration is the lack of any nexus between the plaintiff's claim and the Western District of New York. The plaintiff alleges in the complaint that Fiat frustrated installation and operation of the system in Italy through a variety of activities at the Crescentino foundry, that Fiat owes Shepard Niles money for services performed in Italy, and that Fiat in Italy threatened to damage Shepard Niles' business reputation. All of these acts took place in Italy at the Crescentino foundry; none of these allegations concern activities which took place in New York.

The plaintiff argues that there are significant contacts between the claim and this district because the contract was negotiated and performed primarily in this district. Shepard Niles characterizes its activities in Italy, supervising installation and operation of the system, as merely incidental and supplemental to performance of the primary contractual undertaking, which was the manufacture, fabrication, and delivery of the parts and equipment to the defendant in this district.

■ This argument must be rejected for several reasons. First, the number of hours spent performing the contract in Italy by Shepard Niles' engineers is by no means insubstantial. According to the affidavit of plaintiff's vice president, William Hobbs III, filed on January 4, 1979, 85,569 hours were spent in performing the contract in Montour Falls by the plaintiff and its subcontractor, and 13,570 hours were spent negotiating and supervising installation in Italy. In addition, proper installation and operation of the system in Italy was obviously a necessary and final step to successful completion of the contract. To characterize the activities in Italy as incidental to the main contract seems to distort the true nature of plaintiff's obligation. Second, the relevant contacts for purposes of *forum non conveniens* are the issues in dispute, not uncontested issues. Although contract negotiations took place in New York and the system was manufactured there, these undisputed facts are unrelated to the source of the controversy, the plaintiff's performance in Italy. A nexus between the complaint and the place of negotiation or manufacture cannot be created simply by labeling plaintiff's claim a contract action. Although New York has a greater connection with the suit than a location at which the plaintiff did no business, the connection is not strong enough, considering all of the other factors, to preclude discretionary dismissal on *forum non conveniens* grounds.

As between Fiat and Shepard Niles, the advantages to each party to try this case in its home forum would appear from the affidavits to be about equal. Both would be inconvenienced by producing its own witnesses and records in the other's forum. The defendant has not shown any extreme hardship as to its own witnesses and documents.

However, most if not all of the non-party witnesses are in Italy. The dispute concerns the installation, testing, and operation of the hot metal carrier system designed by Shepard Niles. These events all took place in Italy. The installation was performed by Italian contractors, and a number of essential parts and services were supplied by Italian companies. These non-parties may ultimately be responsible for the failure of the system but cannot be impleaded by Fiat in this action because the court lacks jurisdiction over them. In addition, they are not subject to the court's subpoena power, and therefore their testimony is available only if they testify voluntarily. 28 U.S.C. § 1783; Rule 45(e). Even if these witnesses appeared voluntarily in this court, the cost would be much greater than their appearance in Italy.

■ Although the benefit of impleader in the defendant's forum would not override overwhelming evidence favoring plaintiff's forum, it should be taken into account in a close case. *Olympic Corp. v. Societe Generale, supra,* at 379. In addition, apart from impleader, the Supreme Court in *Gulf Oil* has stressed the importance of trying a case in the forum where personal attendance of essential non-parties can be compelled.

■ Another consideration in my decision is the forum clause in the purchase order, accepted by Shepard Niles, which states that "for any controversy the competent judicial authority is that of Turin, Italy." Mr. Seymour, in an affidavit filed on January 4, 1979, states that in signing the signature page his intent was to acknowledge acceptance of the purchase order and that he neither understood nor intended to accept material in Italian on the back side. These reasons, however, do not justify relieving Shepard Niles of the terms of the forum clause. This was not a consumer transaction but a sophisticated business transaction which had been under discussion by the parties for several years. Shepard Niles was under an obligation to read the purchase order in full and by signing it became bound by its terms. Although the forum clause was in Italian rather than English, the plaintiff was well aware that it was dealing with an Italian company and should have obtained a translation. Section 2–207 of the U.C.C. does not relieve a party of such a clause under these circumstances.

The plaintiff also argues that the forum clause does not use mandatory language and therefore does not limit jurisdiction to Italy. It interprets the clause as stating merely that the court of Turin is qualified as a court of competent jurisdiction but is not the exclusive forum. Shepard Niles also argues that the clause is unenforceable under Italian law.

■ The question of whether the forum clause is mandatory is a close one. *See, e. g., Keaty v. Freeport Indonesia, Inc.,* 503 F.2d 955, 956 (5th Cir. 1974) (finding the statement "the parties submit to the jurisdiction of the courts of N.Y." to be non-

mandatory); *Anastasiadis v. S. S. Little John,* 346 F.2d 281, 282 (5th Cir. 1965) (finding the language "for any dispute between the seaman and the ship, the Greek law will apply, competent courts to solve any dispute will be the Greek courts at Piraeus" to be mandatory). Use of the phrase "the competent judicial authority," rather than the phrase "a competent judicial authority," suggests that it is mandatory. The repeated references to the Italian Civil Code also add weight to the argument that the forum clause is mandatory. In addition, it is not clear what purpose would be served by inserting the clause into the contract if it had not been intended to be mandatory. But even if it were not mandatory, the presence of the forum clause in the contract is an additional factor favoring resolution of the dispute in Italy.

■ Another factor taken into account on *forum non conveniens* motions is the necessity of applying the law of a foreign country. In determining whether Italian or New York law applies to the dispute, this court must follow New York rules governing conflicts of law. *Klaxon Co. v. Stentor Electric Manufacturing,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). In both contract and tort actions, New York follows the "center of gravity" rule. *Auten v. Auten,* 308 N.Y. 155, 124 N.E.2d 99 (1959); *Babcock v. Jackson,* 12 N.Y.2d 473, 240 N.Y. S.2d 743, 191 N.E.2d 279 (1963). Although both New York and Italy have some contacts with the plaintiff's claims, Italy's are far more significant: the breach here, whether by plaintiff or defendant, occurred in Italy during the course of installation and the subject matter of the contract is located there. The threats allegedly made by Fiat took place in Italy, and any resulting injury had its genesis there. Under the center of gravity rule, it would appear that Italian law applies to the parties' claims. An additional reason for finding Italian law applicable is the reference AA, in articles 5, 7, and 8 of the purchase offer, to Italian law, which strongly suggests that the parties contemplated the applicability of Italian law to the contract except where specifically ruled out, as in articles 5, 7, and 8.

Another factor favoring Italy is the presence there of the subject of the dispute—the hot metal transport system. A view of the system would greatly assist the fact finder as well as expert witnesses in understanding how the system works and in determining the cause of the difficulties.

The plaintiff argues that Fiat has failed to prove that the Italian courts are an adequate alternative forum. In connection with this question, both parties have filed affidavits of professors of Italian commercial law. Professor Remo Franceschelli, in an affidavit filed January 4, 1979 on behalf of the plaintiff, states that Italy is an inadequate forum because Italian law differs in a number of respects from American law. Most notably, pretrial discovery is not available in Italy, the trial would take several years, and various claims asserted by the plaintiff such as the antitrust claim, the claim for punitive damages, and the request for a declaratory judgment, could not be asserted in Italy. Professor Franceschelli also stated that serious questions exist as to whether the Italian courts would assert jurisdiction over Shepard Niles.

 I am not convinced that Italy would be an inappropriate forum. The defendant need not prove that Shepard Niles would be subject to the jurisdiction of Italian courts if sued by Fiat. The defendant also need not prove the existence of an alternative forum in which the plaintiff could have originally commenced its action without defendant's consent. *Schertenleib v. Traum*, 589 F.2d 1156 (2d Cir. 1978). To insure that the plaintiff is not left without a remedy, dismissal in such cases is typically conditioned on defendant's consent to jurisdiction in the alternative forum and waiver of any statute of limitations defense which has arisen from commencement of the action in this court. *Id.* These conditions shall be imposed in this case.

The thrust of plaintiff's complaint is not the antitrust claim, the tort claim, or the declaratory judgment request, but the question of who is responsible for the system's failure to operate as intended. This claim can be litigated in Italy, and therefore I see no undue prejudice if the other claims could not be joined.

The Second Circuit has recognized that a motion to dismiss based on *forum non conveniens* grounds may lie even where it will result in some disadvantage to one of the parties.

> A district court has discretion to dismiss an action under the doctrine of *forum non conveniens*, however, even though the law applicable in the alternative forum may be less favorable to the plaintiff's chance of recovery. . . . A contrary holding would emasculate the doctrine, for a plaintiff rarely chooses to bring an action in a forum, especially a foreign one, where he is less likely to recover.

*Fitzgerald v. Texaco, Inc.*, 521 F.2d 448, 453 (1975). *See also Ionescu, supra* at 145–47.

It also should be noted that the dockets in this district are overcrowded, and a substantial delay is likely before this case could reach trial. Some differences in procedures between American and foreign courts are inevitable, and the plaintiff has not shown that any substantial rights are jeopardized. In this connection, it should be recalled that the plaintiff consented to litigate claims arising out of the contract in Italy.

In sum, the defendant has shown that he will suffer more than mere inconvenience if this litigation proceeds in the Western District of New York. Assuming *arguendo* that *Alcoa II* applies to actions outside the admiralty field, the defendant has produced "positive evidence of unusually extreme circumstances making it materially unjust to the defendant that jurisdiction be retained in the American courts." The balance of conveniences weighs heavily in favor of trial in Italy. Most of the witnesses are in Italy, the foundry is located there, the relevant events took place there, and Italian law probably applies. In addition, the forum clause designates Italy as the place of trial. As recently stated by the Second Circuit in *Schertenleib v. Traum, supra*, in light of facts such as these,

> it is difficult to understand why plaintiff would prefer to litigate here when it is

obviously cheaper for him, as well as for defendant, to litigate [abroad] . . . unless one attributes to plaintiff a desire to cause defendant extra expense even if at greater cost to himself.

589 F.2d at 1165. This statement would appear to be particularly fitting in this case where 98% of the contract price has already been paid and Shepard Niles, in anticipation of being sued by Fiat in Italy for breach of contract, sued for a declaratory judgment in this district.

The defendant's motion is granted on condition that defendant submit to the jurisdiction of the appropriate Italian court and waive any statute of limitations defenses which arose after the plaintiff filed its complaint.

So ordered.