**DAY & ZIMMERMANN, INC.**

v.

**EXPORTADORA SALCEDO DE ELABO-
RADOROS DE CACAO, S.A.**

Civ. A. No. 81–3336.

United States District Court,
E.D. Pennsylvania.

Oct. 20, 1982.

Norman L. Holmes, Blank, Rome, Comisky & McCauley, Philadelphia, Pa., for plaintiff.

Robert W. Maris, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

SHAPIRO, District Judge.

Plaintiff Day & Zimmermann ("D & Z") is a Maryland engineering and architectural consulting firm with executive offices and principal place of business in Philadelphia, Pennsylvania; defendant Exportadora Salcedo de Elaboradoros de Cacao, S.A. ("SALCO") is an Ecuadorian producer of chocolate, cocoa butter and cocoa powder. Plaintiff claims a balance due under a contract to provide design, engineering, procurement and construction services for defendant's cocoa bean processing plant in Guayaquil, Ecuador. Plaintiff also demands reimbursement for funds advanced on behalf of defendant to third-party suppliers. Complaint, Counts 6, 11, 12. Plaintiff's claims

total approximately $200,000. *Id.,* Count 13.

Subject matter jurisdiction under 28 U.S.C. § 1332 is conceded. Objection to personal jurisdiction over defendant has been waived; *see,* Fed.R.Civ.P. 12(g) and (h)(1)(A): Venue is proper under 28 U.S.C. § 1391(d). However, defendant moves to dismiss for *forum non conveniens* on the ground that trial in this forum would be expensive and would preclude defendant from presenting crucial evidence. Memorandum of Law in Support of Defendant's Motion to Dismiss the Complaint, 33. Upon consideration of defendant's motion, plaintiff's response, defendant's reply, supporting briefs, affidavits and exhibits, the motion is denied.

The doctrine of *forum non conveniens* permits a court having jurisdiction to decline to exercise it; it presupposes the existence of an alternative forum where the defendant is amenable to process. *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 507, 67 S.Ct. 839, 842, 91 L.Ed. 1055 (1946). Defendant, an Ecuadorian corporation, avers that it is subject to the personal jurisdiction of the Ecuadorian courts which also have jurisdiction over the subject matter of the dispute. Reply Memorandum of Law in Support of Motion to Dismiss, 2.

However, defendant also avers that the contract in question is unenforceable as a matter of law in Ecuador because the contract was not registered there. There is a distinction between a forum which lacks jurisdiction over a case or its parties and one which is capable of exercising jurisdiction but may dismiss the claim on the merits. Generally, the possibility of a less favorable outcome under the substantive law of the alternative forum is not in itself a ground for denying a *forum non conveniens* motion. But applying the doctrine of *forum non conveniens* is inappropriate where the alternative forum provides a clearly "inadequate or unsatisfactory" remedy. *See, Piper Aircraft v. Reyno,* —— U.S. ——, ——, 102 S.Ct. 252, 265, 70 L.Ed.2d 419, 435 (1981). If the contract is unenforceable as a matter of law, plaintiff's remedy in the

Ecuadorian courts appears inadequate, if not illusory. The court need not reach this issue because defendant has not met its burden of proof that the case should be dismissed on *forum non conveniens* grounds even if Ecuador does provide a suitable alternative forum.

The doctrine of *forum non conveniens* is discretionary in nature, *see, Gilbert, supra* 330 U.S. at 507–08, 67 S.Ct. at 842–843; it permits dismissal where plaintiff's forum choice is oppressive and vexatious to defendant or where administrative and legal difficulties make the chosen forum otherwise inappropriate; *Koster v. Lumbermen's Mut. Cas. Co.,* 330 U.S. 518, 524, 67 S.Ct. 828, 831, 91 L.Ed. 1067 (1947). But plaintiff's choice of forum should be disturbed only where the balance of convenience strongly favors the defendant. *Gilbert, supra* 330 U.S. at 508, 67 S.Ct. at 843; *Hoffman v. Goberman,* 420 F.2d 423, 426 (3d Cir. 1970). Where an American plaintiff has chosen his or her home forum and the alternative forum is foreign, an even stronger showing is required. *See, Hoffman, supra* at 428 (". . . [plaintiff's] election of such a forum should not be disregarded in the absence of persuasive evidence that the retention of jurisdiction will result in manifest injustice to the defendant."); *Olympic Corp. v. Societe Generale,* 462 F.2d 376, 378 (2d Cir. 1972); *cf. Mizokami Bros. of Ariz., Inc. v. Baychem Corp.,* 556 F.2d 975, 977 (9th Cir. 1977), *cert. denied,* 434 U.S. 1035, 98 S.Ct. 770, 54 L.Ed.2d 783 (1978).

"Private interest" factors relevant to a *forum non conveniens* inquiry include: relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling witnesses; cost of trial attendance by willing witnesses; possibility of viewing the premises, if appropriate; and enforceability of the judgment. A court must not permit harassment of the defendant by plaintiff's choice of a forum unnecessarily inconvenient to the defendant. *Gilbert, supra* 330 U.S. at 508, 67 S.Ct.

at 843. It must weigh the potential for a fair trial in each alternative forum. "Public interest" factors include the relative congestion of court dockets, choice of law considerations, and the relationship of the community in which the courts and jurors reside to the events giving rise to the litigation. *Id.* at 508–09, 67 S.Ct. at 843.

SALCO contracted with D & Z to design, prepare plans and specifications, and procure materials and equipment[1] for its new cocoa processing plant in Ecuador. SALCO asserts that the contract with D & Z was to be performed primarily in Ecuador, not Pennsylvania, *id.* at 19, and that a "significant amount of time [was spent by plaintiff's employees and agents] in performing site surveys, information gathering, and various on-site supervisory and inspection services . . . during various stages of development and construction of the new plant," *id.* at 9. SALCO does not dispute that it rejected D & Z's proposal to provide construction management services in Ecuador and contracted with an Ecuadorian firm to supervise construction of the plant instead. *Id., ¶¶* 6–7. D & Z avers that the time spent by its personnel in Ecuador approximated only six percent of the total time spent on the project and that most of the remainder (94%) was spent at D & Z headquarters in Pennsylvania. Affidavit of Gil J. Karlsson, *¶¶* 9–10. The contract was for the most part performed in the United States.

SALCO contends that "the focus of this action will be not on plaintiff's claim but on the defendant's counterclaim that faulty performance of the contract resulted in the construction of a substandard . . . plant in Ecuador." Defendant's Memorandum, *supra* at 3. It asserts that the trier of fact will be deprived of the opportunity to view the new cocoa bean processing plant if this case is tried here. Had D & Z's contractual obligations included direct supervision of construction of defendant's plant, view of the plant site might be critical. But D & Z's contractual obligations were limited

---

1. The procurement services were added to the original contract by subsequent letter agreement. Karlsson Affidavit, ¶ 8 and Exhibit "IV."

386

chiefly to design and procurement; evidence of D & Z's performance will be found in designs, specifications and procurement orders it executed. D & Z's books and records are located in Pennsylvania, as are its executives, employees who worked on the project, and chocolate industry experts whom D & Z will call to testify to the validity of its designs. Plaintiff's Memorandum of Law Opposing Defendant's Motion to Dismiss the Complaint on *Forum Non Conveniens* Grounds, 13; Karlsson Affidavit, ¶ 22. The parties are not precluded from submitting videotaped, photographic or other evidence of the cocoa plant's condition. Dismissal for inability to view the plant is not warranted. But *cf. Shepard Niles Crane & Hoist Corp. v. Fiat, S.A. et al.,* 84 F.R.D. 299 (W.D.N.Y.1979) (suit against Italian corporation dismissed where contract at issue included installation of hot metal carrier system in Italy); *J.F. Pritchard & Co. v. Dow Chemical of Canada, Ltd.,* 331 F.Supp. 1215 (W.D.Mo.1971), *affirmed,* 462 F.2d 998 (8th Cir. 1972) (suit against Canadian corporation dismissed where contract included construction of ammonia plant in Canada).

SALCO avers it would call over forty witnesses on the issue of D & Z's performance under the disputed contract and that most of them are located in Ecuador. Affidavit of Guillereno Arosemena, ¶ 22. Of those potential witnesses, at least five are party witnesses (*id.,* (1)–(4), (39)); of the non-party witnesses, four are employees of U.S. corporations (*id.,* (23), (24), (35), (40)) and the remaining non-party witnesses are Ecuadorian architects, engineers and contractors. D & Z asserts that most of these proposed witnesses have nothing to do with the scope of D & Z's work; it proposes to call sixteen employees and at least sixteen non-party witnesses to testify, of whom ten or more may be joined as third-party defendants. Plaintiff's Memorandum, *supra* at 8–9; Karlsson Affidavit, ¶¶ 21–22. D &

Z states that if SALCO's actual counterclaim proves broader in scope than its present allegations suggest, plaintiff might wish to call additional witnesses or join additional defendants from among the more than sixty U.S. contractors and suppliers with whom it dealt in fulfilling its procurement obligations to SALCO. Plaintiff's Memorandum, *supra* at 9.

Whether this suit is litigated in the Eastern District of Pennsylvania or in Ecuador, the non-resident corporation will incur substantial costs in making its own employees available to testify at trial and its operations may be seriously disrupted by their absence. The non-resident party may be prevented from the use of process for compelling the testimony of witnesses and from joining third-party defendants beyond the court's jurisdiction.[2] SALCO must prove that the balance of convenience in this regard tips strongly in its favor. *Gilbert, supra* 330 U.S. at 508, 67 S.Ct. at 843; *see, Dale Metals Corp. v. Kiwa Chemical Industry Co., Ltd. et al.,* 442 F.Supp. 78, 81 (S.D. N.Y.1977) (dismissal motion denied where Japanese defendants at best tipped balance of witnesses "into equipoise"). It has not met that burden.

■■ Finally, SALCO argues that this court is not an appropriate forum because it would be required to apply Ecuadorian law. Defendant's Memorandum, 30–33. But a district court need not dismiss a case simply because it would have to apply foreign law, *Hoffman, supra* at 427. In diversity suits the district court will apply the choice of law rules of the forum state. *Klaxon Co. v. Stentor Electric Manufacturing Co., Inc.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), *on remand,* 125 F.2d 820 (3d Cir. 1942), *cert. denied,* 316 U.S. 685, 62 S.Ct. 1284, 86 L.Ed. 1757 (1942); *Melville v. American Home Assurance Co.,* 584 F.2d 1306, 1308 (3d Cir. 1978). Pennsylvania's conflicts law combines both grouping of contacts and interest analysis. *Id.* at 1311.

**2.** Should SALCO assert a third-party claim involving essentially Ecuadorian transactions, witnesses and material evidence against another Ecuadorian party, we reserve the right to exercise our discretion with regard to such a claim. *See,* Fed.R.Civ.P. 14(a) and E.D.Pa. Local Rule 22(a); *Olympic Corp., supra* (third-party claim dismissed on *forum non conveniens* grounds).

■ In a suit for breach of contract relevant contacts include the places of negotiation, contracting and performance, location of the subject matter of the contract, and citizenship of the parties. *Schoenkopf v. Brown & Williamson Tobacco Corp.,* 483 F.Supp. 1185, 1195 (E.D.Pa.1980), *affirmed,* 637 F.2d 205 (3d Cir. 1980).

■ The principal contract at issue was negotiated both in Pennsylvania and Ecuador. *See,* Arosemena Affidavit, *supra,* ¶¶ 5–9; Affidavit of Charles A. Word, ¶¶ 4, 6–18. It was executed by SALCO in Ecuador, although the parties differ as to the date and means by which the executed contract was returned to D & Z. *See,* Arosemena Affidavit, *supra,* ¶ 8; Word Affidavit, *supra,* ¶ 17. The subsequent letter agreement adding procurement services was also executed by SALCO in Ecuador, Karlsson Affidavit, *supra,* ¶ 8. But the designs, specifications and procurement orders which are the subject of the contract are located in Philadelphia. The contract was substantially performed at plaintiff's Philadelphia headquarters, *see, id.,* ¶¶ 9–10.

The more significant contacts are in Pennsylvania. *See, Schoenkopf, supra* at 1195 and n. 3 (Pennsylvania law applied where Pennsylvania was "central and substantial place of performance"); *Bohrer-Reagan Corp. v. Modine Manufacturing Co.,* 433 F.Supp. 578 (E.D.Pa.1977) (Pennsylvania law applied where place of contract formation was unclear but place of performance was Pennsylvania); *cf. Shepard Niles, supra* (suit dismissed where significant part of performance was in Italy and contract stipulated application of Italian law in an Italian forum); *Pritchard, supra*

(suit dismissed where contract was executed and performed in Canada and contract stipulated application of Canadian law).

SALCO nevertheless asserts that under interest analysis, Ecuadorian law should govern. Defendant's Memorandum, *supra* at 32. Ecuador has a significant interest in litigation involving Ecuador's leading producer of cocoa products. *See,* Word Affidavit, Exhibit "A" (advertising brochure of Salcedo Group, SALCO's parent company). Should SALCO implead Ecuadorian contractors and suppliers involved in construction of its plant, Ecuador's interest in the dispute would be even greater. However, the interest of Pennsylvania is also substantial. D & Z's principal place of business is in Philadelphia, where it employs approximately six hundred people. Affidavit of Harry M. Perks, ¶ 4. Sixty or more contractors and suppliers with whom D & Z did business in executing its contract with SALCO are United States companies. Plaintiff's Memorandum, *supra* at 9. Of those that D & Z names as potential third-party defendants, two are Pennsylvania corporations (five are New Jersey or New York companies having economic ties with this forum). In light of these factors, it is Pennsylvania law that will most likely apply.[3]

Thus, neither a contacts nor interest analysis dictates the application of Ecuadorian law; neither private nor public interest factors weigh heavily in defendant's favor. Therefore, plaintiff's forum choice will not be disturbed. *See, Gilbert, supra* 330 U.S. at 508, 67 S.Ct. at 843; *Hoffman, supra* at 426.

---

**3.** SALCO may have acquiesced in or planned with D & Z the evasion of Ecuadorian registration requirements and taxes. The parties agreed in preliminary negotiations that D & Z would be reimbursed for any Ecuadorian taxes or government fees it incurred. Word Affidavit, ¶ 10 and Exhibit "D" (D & Z's original proposal letter) at 7. The final contract provided that SALCO would pay Ecuadorian taxes on the project. *Id.,* Exhibit "J" at 13–14. After the contract was executed, SALCO sent D & Z a second "contract" to be used "to minimize Ecuadorian taxes." Karlsson Affidavit, Exhibit

"IX" ("contract" and cover letter). SALCO contends that in order to avoid payment of Ecuadorian taxes the contract was never registered in Ecuador; Defendant's Memorandum, *supra* at 4. The Ecuadorian withholding tax was also avoided by contractual payments to D & Z in United States dollars; Arosemena Affidavit, ¶ 11. SALCO was the party liable under the contract to pay the Ecuadorian taxes levied on the project, so it would be the beneficiary of any avoidance of Ecuadorian taxes. It is somewhat ironic that SALCO now invokes the interest of Ecuador in this matter.